RAYMOND GROETEKE, APPELLEE, v. STEVE STUBBS, APPELLANT.

241 N. W. 2d 538

Filed May 5, 1976. No. 40415.

Daniel A. Martin of Kerrigan, Line, Martin & Hanson, for appellant.

Yost, Schafersman, Yost & Lamme, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This is an action for damages arising out of the construction of a trench silo on the property of the plaintiff. The county judge found that the plaintiff was entitled to recover $4,999 from the defendant. This judgment was affirmed by the District Court. The defendant has appealed and contends the evidence does not support the judgment.

The plaintiff is a farmer and cattle feeder in Dodge County, Nebraska. In 1970, the plaintiff and his son looked at several trench silos that had been built on other farms and decided to have one constructed on the plaintiff's farm. They obtained the defendant's name at one of the farms where a trench silo had been built. The plaintiff's son, Tom Groeteke, called the defendant who lived in Iowa and made arrangements for the defendant to come to the plaintiff's farm in the fall.

There was no written contract and the evidence is in conflict as to the nature of the agreement between the plaintiff and the defendant. The plaintiff alleged the oral contract called for the defendant to design and construct the silo. The defendant alleged he was employed solely to excavate a trench for the walls and denied that he had designed or constructed the silo.

In determining the sufficiency of the evidence to support the judgment it must be considered in the light most favorable to the plaintiff, all conflicts in the evidence must be resolved in his favor, and he is entitled to the benefit of every reasonable inference that may be deduced from the evidence.

The silo as constructed was approximately 18 feet wide and 200 feet long. The walls were constructed by digging a U-shaped trench 6 inches wide and 12 feet deep into a hill and then filling the trench with rein-

forced concrete. After the walls had cured the dirt between the walls was removed and a concrete floor was poured. The walls had concrete anchors extending to the side and located at intervals of 50 to 70 feet. The anchors were constructed by pouring concrete into holes approximately 18 inches in diameter and 8 inches deep, located about 2 feet from the wall. The anchors were connected to the wall by a strip of reinforced concrete.

The plaintiff's son testified that the defendant advised them to employ a dirt contractor to grade the area and to purchase the reinforcing steel and concrete that was to be used in constructing the walls. The plaintiff also employed two high school boys to assist the defendant, and employed another person to install a metal strip along the edge of the walls to be used to hold a plastic cover over the silo and protect the grain or silage stored in the silo.

After the dirt contractor had completed the grading and preparation at the site, the defendant brought a trenching machine to the farm and dug the trench for the walls. The reinforcing steel had been wired together by the plaintiff in accordance with instructions from the defendant so that the bars formed 12-foot grids with the bars 16 inches apart. As the concrete arrived, the reinforcing steel was placed in the trench and the concrete poured into the trench. The defendant assisted the high school boys in placing the steel and concrete in the trench.

Approximately 2 weeks later, the dirt was excavated from between the walls and the floor was constructed by the plaintiff. The metal strip was then placed along the edge of the walls. The defendant was paid $1.60 per foot for 420 feet of trenching, a total of $672. The other expense, amounting to $4,187.23, was paid directly to the other workmen and suppliers by the plaintiff.

In the fall of 1970 the silo was filled with 40,000 bushels of ground high moisture corn. The corn was fed during the winter and the silo was empty by March

or April 1971. The silo was filled again in the fall of 1971 and was empty by the spring of 1972. During the summer of 1972 about 60 feet of the north wall near the east end, which was the closed end, collapsed and fell into the silo. The plaintiff requested the defendant to repair the silo but he refused to do so. The plaintiff stored about 30,000 bushels of grain in the silo that winter.

Sometime during the winter of 1972-73 approximately 60 feet of the south wall near the east end collapsed and fell into the silo. Approximately 500 bushels of corn then in storage with a value of approximately $500 was destroyed at the time the part of the south wall collapsed.

The plaintiff has made some repairs and improvements to stabilize the walls that are still standing. Bridge planks have been laid across the top of the silo to brace the walls and additional anchors have been constructed along the south wall. The north wall has not been reinforced because the plaintiff plans to remove the north wall and then extend the floor over to the wall of another silo which is nearby.

The plaintiff produced the testimony of another farmer who had employed the defendant to construct a similar silo on his farm. This witness testified that it had been necessary to construct additional anchors or "dead men" to stabilize the walls of his silo but his silo was now safe to use.

A licensed engineer testified that he had inspected the silo on the plaintiff's farm and that the walls were inadequate to withstand the thrust of the earth. He also testified that the concrete was defective because it had not been vibrated at the time the walls were poured. The concrete was "honeycombed" with air pockets and the aggregate had become segregated during the construction of the wall. He further testified the reinforcing in the wall was inadequate. This witness did not testify what would be required to reinforce the

existing walls but testified an adequate wall would have a 24-inch footing 7 feet wide with a wall 22 inches wide at the base tapering to 8 inches wide at the top.

It is apparent in this case that the plaintiff did not contemplate the construction of a silo having walls similar to the wall described by the engineer as an adequate wall. The plaintiff had looked at other silos and contemplated a silo constructed in the manner in which the silo was actually constructed.

The defendant was not a general contractor and did not agree to construct the silo for an agreed amount. The plaintiff's agreement with the defendant called for the defendant to excavate 420 feet of trench at an agreed price of $1.60 per lineal foot. The plaintiff was billed on this basis and the defendant was paid on that basis. All the other workmen and suppliers were paid directly by the plaintiff.

The defendant, however, did nore than excavate the trench. He advised the plaintiff concerning the reinforcing and helped place the concrete in the trench. The two high school boys employed by the plaintiff worked under his direction.

The defendant testified he had been engaged in the construction of 300 silos and the plaintiff was entitled to rely on the defendant's knowledge and experience in the construction of silos. To the extent the collapse of the walls was due to defective workmanship and inadequate reinforcing and anchoring of the walls the evidence sustains a finding of liability against the defendant. The defendant is also liable for the cost of additional anchoring and reinforcing of the walls still standing to the extent the additional work is necessary because of defective workmanship and inadequate reinforcing.

The plaintiff's evidence shows that a part of the silo may still be used. The plaintiff himself testified it was not a complete loss. The evidence does not sustain a finding that the entire silo is useless so that the plain-

tiff could recover the entire cost of construction. The applicable measure of damages is the cost of remedying the defects. Stillinger & Napier v. Central States Grain Co., Inc., 164 Neb. 458, 82 N. W. 2d 637; Jones v. Elliott, 172 Neb. 96, 108 N. W. 2d 742.

The evidence does not show what the cost will be to reconstruct the walls which have collapsed. The judgment is therefore reversed and the cause remanded for a new trial on the issue of damages.

REVERSED AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES.